ROBERT J. ROSATI, SBN 112006
robert@erisalg.com
RAQUEL M. BUSANI, SBN: 323162
raquel@erisalg.com
6485 N. Palm Avenue, Suite 105
Fresno, California 93704
Telephone: 559-478-4119
Telefax: 559-478-5939

Attorneys for Plaintiff,
LORENA MACIAS

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| LORENA MACIAS,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>                    Defendant. | CASE NO.<br><br>**COMPLAINT**<br><br>**FOR DECLARATORY AND EQUITABLE RELIEF FOR LONG TERM DISABILITY BENEFITS UNDER 29 U.S.C. SECTION 1132(a)(1) and (3)** |

Plaintiff, Lorena Macias ("Plaintiff" or "Macias") alleges as follows:

## JURISDICTION

1.      Plaintiff's claims for relief arise under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1) and (3).  Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America.  29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

///

///

## VENUE

2.      Venue is proper in the Eastern District of California because Plaintiff was and is a resident of the City of Fresno, in the County of Fresno, California, when Defendant denied her long term disability benefits and denied her appeal of that decision.  Therefore, 29 U.S.C. section 1132(e)(2) provides for venue in this Court.  Intradistrict venue is proper in this Court's Fresno Division.

## PARTIES

3.      Plaintiff is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1000(7), of the Service Employees International Union (SEIU) Local 521 long term disability plan ("The Plan") and thereby entitled to receive benefits therefrom. Plaintiff was a beneficiary because she was member of SEIU Local 521, which established The Plan for the benefit of its members.

4.      The Plan is an employee welfare benefit plan organized and operating under the provisions of ERISA, 29 U.S.C. section 1001 et seq.

5.      Defendant United of Omaha Life Insurance Company, ("United of Omaha"), issued Group Policy No.: G4PR671K to Service Employees International Union Local 521 ("The Policy") under which benefits are provided by The Plan, is the insurer and decision maker for The Plan, acted in a fiduciary capacity when it denied Macias claim and appeal and when it provided false information to her, as further alleged herein, and is legally liable for providing the benefits sought and for the fiduciary breaches at issue herein.

## FIRST CLAIM FOR RELIEF

6.      The Policy provides long term disability ("LTD") benefits, which benefits potentially could continue until the claimant's Normal Social Security Retirement age, which for Macias is age 67.

7.      The Policy was issued in and is subject to California law.

8.      Under California law, insurance policies are governed by the statutory and decisional law in force at the time the policy is issued.  Such provisions are read into each policy

thereunder and become a part of the contract with full binding effect on the parties.  This principle governs not only new policies but also renewals: each renewal incorporates any changes in the law that occurred prior to the renewal.

    A.    The Policy definitions of "disabled" as quoted in Paragraph 10, are based on language approved by the California Department of Insurance for disability insurance in California.

    B.    The Policy's definitions of "disabled," as quoted in Paragraph 10, require an insurance company to consider: (a) whether the claimant could reasonably be expected to work; recognizing the fact that the insured may do some work or even the fact that he or she may be physically able to do so is not conclusive evidence that his or her disability is not total, if reasonable care and prudence require that he or she desist; (b) given the claimant's physical and/or mental capacity; (c) and his or her station in life; (d) to perform the "substantial and material" duties of his or her own occupation; (e) with "reasonable continuity"; and (f) in the usual and customary way.  Recovery is not precluded because the claimant is able to perform sporadic tasks or attend to simple, inconsequential details incident to the conduct of business.  When evaluating a claimant's capacity to perform "any occupation" the insurance company must take into account the claimant's age, education, experience, training, and station in life.  Thus, an uneducated laborer cannot be expected to become an accountant or banker and a doctor, lawyer, or business executive is totally disabled even if he could run a news stand or work as a day laborer.

9.    In order to be eligible for benefits under The Policy, an employee must meet The Policy's definition of disability.  As applicable to Macias, The Policy has an elimination period of 365 calendar days.

10.    The Policy includes the following definitions:

    A.    Total disability is defined as:

"Totally Disabled and Total Disability means that as a result of Injury or Sickness You are unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue Your Usual Occupation and You are not working in Your Usual Occupation.

After a Monthly Benefit has been paid for 24 months, You are Totally Disabled when as a result of Injury or Sickness You are not able to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity."

B.      Partial disability is defined as:

"Partially Disabled and Partial Disability means You are not Totally Disabled and that while actually working in Your Usual Occupation, as a result of Injury or Sickness You are unable to earn 80% or more of Your Basic Monthly Earnings.
After a Monthly Benefit has been paid for 24 months You are Partially Disabled if You are not Totally Disabled and that while actually working in an occupation, as a result of Injury or Sickness, You are unable to engage with reasonable continuity in that or any other occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity.

C.      Usual occupation is defined as:

"Usual Occupation means any employment, business, trade or profession and the Substantial and Material Acts of the occupation You were regularly performing for the Policyholder when the Disability began. Usual Occupation is not necessarily limited to the specific job You performed for the Policyholder."

D.      Substantial and material acts are defined as:

"Substantial and Material Acts means the important tasks, functions and operations generally required by employers from those engaged in Your Usual Occupation that cannot be reasonably omitted or modified.

In determining what substantial and material acts are necessary to pursue Your Usual Occupation, We will first look at the specific duties required by Your employer. If You are unable to perform one or more of these duties with reasonable continuity, We will then determine whether those duties are customarily required of other employees engaged in Your Usual Occupation. If any specific, material duties required of You by Your employer differ from the material duties customarily required of other employees engaged in Your Usual Occupation, then We will not consider those duties in determining what substantial and material acts are necessary to pursue Your Usual Occupation."

11.     The Policy limits benefits for a disability because of a "mental disorder."

A.      Mental disorder is defined as:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Mental Disorder means any condition or disease, regardless of its cause, listed in the most recent edition of the International Classification of Diseases as a Mental Disorder.
The Policy may include limited benefits for any one of the conditions or diseases included in this definition. If it does, only those limited benefits relating to this condition or disease will be available."

B.     The Policy has the following mental disorder limitation:

"MENTAL DISORDER LIMITATION

If You are Disabled because of a Mental Disorder, Your Monthly Benefit will be limited to a lifetime total of 24 months while insured under the Policy, unless You are confined as a resident inpatient in a Hospital at the end of that 24 month period. The Monthly Benefit will continue to be paid during such confinement.

If You are still Disabled when You are discharged, the Monthly Benefit will be paid for a recovery period of up to 90 additional days. If You become re-confined as a resident inpatient in a Hospital during the recovery period for at least 14 consecutive days, benefits will be paid for the duration of the second confinement.

In no event will benefits payable due to a Mental Disorder be payable beyond the Maximum Benefit Period as shown in the Schedule.

This Mental Disorder Limitation will not apply to dementia if is it the result of:
a) stroke;
b) trauma;
c) viral infection;
d) Alzheimer's disease; or
e) other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment."

12.     Macias was employed by Fresno County as an Office Assistant III.  In that capacity she was expected to perform 'the most complex, difficult and critical clerical work.'  Her duties included typing, filing, processing materials and records; composing and editing reports and correspondence; gathering information from various sources; receive and apply payments; operating a multiline phone system; using all office machines; and interpreting for Spanish speakers as needed. Her job required knowledge of:

\*      Basic office practices, procedures and terminology;

\*      Modern office equipment;

\*      Department practices, policies, and procedures necessary to train, assign, review and coordinate the work of subordinate staff;

\*      Correct grammar, spelling and punctuation;

\*      Record keeping practices;

\*      Alphabetical and numerical filing methods; and

\*      Principles and practices of effective customer service.

\*      Part of her job included interpreting for Spanish speakers.  Since this was not an official part of her job description, she was paid a stipend of $24.00, per pay period to compensate her for the additional tasks she performed for the County.

13.      Macias' became disabled due to the combined effects of several co-morbid conditions. Her last day of work was December 15, 2017.   She claimed disability beginning January 28, 2018.

14.      On November 19, 2019, Macias timely submitted her application for long term disability benefits to United of Omaha, explaining that the delay in applying was due to her forgetting (part of her disabling conditions) that she had the disability insurance benefit.

15.      By letter dated December 5, 2019, Macias was granted Fresno County Non-Service Disability Retirement effective June, 2018, by the Fresno County Employees Retirement Association (FCERA).

A.      Public employee retirement boards, such as FCERA, have plenary authority regarding and  fiduciary responsibility for, the administration of their retirement systems.  (Cal. Const., art, XVI § 17.)

B.      A county's retirement system is administered by a county retirement board under the County Employees Retirement Law of 1937.  (Gov. Code, § 31450 et seq.; hereafter the CERL.)

C.      County retirement systems formed under the CERL provide both service retirements based on age and years of service (Gov. Code, § 31670 et seq.) and disability retirements based on an employee becoming permanently incapacitated for the performance of his or her work duties.  (Gov. Code. § 31720, et seq.)

D.      When the statutory requirements are met, an employee member of a county retirement system who is permanently incapacitated may separate from county service and receive either a service-related disability retirement and allowance, or a general disability retirement and allowance. (Gov. Code, § 31720.)

E.      A county retirement board must investigate applications and provide benefits only to those members who are eligible for them. The board may require such proof as it deems necessary to determine the existence of a disability. (Gov. Code, § 31723.)

F.      Permanent incapacity for the performance of duty shall in all cases be determined by the board. (Gov. Code, § 31725.) If the proof received, including any medical examination, shows to the satisfaction of the board that the member is permanently incapacitated, then the board shall retire the member. (Gov. Code, § 31724.) If the board is not satisfied that the member is permanently incapacitated according to the proof received, the request for disability retirement must be denied. (Gov. Code, § 31725.)

G.      When a county retirement board is satisfied that the member is permanently incapacitated and grants the member a disability retirement, the retirement is "effective on the expiration date of any leave of absence with compensation to which the member shall

become entitled or effective on the occasion of the member's consent to retirement prior to the expiration of such leave of absence with compensation." (Gov. Code, § 31724.)

H.     Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if specified conditions are met. (Gov. Code, §31720.)  "Permanently incapacitated" means that the member is unable permanently to engage in any substantial gainful employment."  (Gov. Code §31720.1.)

I.     In determining whether a member is eligible to retire for disability the board shall not consider a medical opinion unless it is deemed competent and shall not use disability retirement as a substitute for employer's disciplinary process. (Gov. Code §31720.3.)

J.     If the board finds, on medical advice, that a member in county employment, although incapacitated for the performance of his duties, is capable of performing other duties in the service of the county, the member shall not be entitled to a disability retirement allowance if any competent authority in accordance with any applicable civil service or merit system procedures offers and he accepts a transfer, reassignment, or other change to a position with duties within his capacity to perform with his disability.  (Gov. Code §31725.5.)

K.     When the board finds, based on medical advice, that a member in county service is incapacitated for the performance of the member's duties, the board shall determine, based upon that medical advice, whether the member may be capable of performing other duties.  If the board determines that a member, although incapacitated for the performance of the member's duties, is capable of performing other duties, the board shall notify the appropriate agency in county service of its findings.  (Gov. Code § 31725.65.)

16.     By letter dated October 8, 2020, United of Omaha denied Ms. Macias' application for long term disability benefits.  The letter invited Macias to submit an appeal of that decision. At that time United of Omaha had not investigated and was not aware that Macias had been granted a disability retirement by FCERA.

17.     By letter dated March 30, 2021, Macias, through counsel, appealed the denial of her application for LTD benefits.  The letter, in part:

A.     Explained Macias' functional abilities during the pertinent time period;

B.     Stated that United of Omaha withheld pertinent documents;

C.     Summarized Macias' relevant medical records;

D.     Summarized Macias' medications;

E.     Explained that United of Omaha failed to properly consider pain as a disabling condition;

F.     Explained that The Policy's 24-month mental disorder limitation, see Paragraph 11, does not apply to Macias' claim;

G.     Demonstrated that United of Omaha's medical opinion was unsupported;

H.     Explained that United of Omaha failed to properly consider fatigue as a disabling condition;

I.     Explained that United of Omaha failed to realistically consider side effects of medication as a disabling condition.

J.     Explained that United of Omaha failed to properly consider mental clouding as a disabling condition;

K.     Explained that United of Omaha failed to perform a whole person evaluation;

L.     Explained that United of Omaha failed to perform a proper review of the duties of Macias' own occupation;

M.      Explained that United of Omaha misrepresented the terms of The Policy;

N.      Explained that United of Omaha's denial of Macias' claim was invalid because it did not properly consider the vocational criteria required under California law;

O.      Noted that United of Omaha failed to have Macias examined;

P.      Explained that Macias had been granted disability retirement benefits by the Fresno County Employees Retirement Association;

Q.      Explained that United of Omaha's administrative processes are unfair and do not comply with ERISA;

R.      Demonstrated that United of Omaha's denial of Macias' benefits was contrary to the evidence;

S.      Demonstrated that Macias was disabled under the terms of The Policy;

18.     As part of her appeal, Macias explained that she is unable to perform her own or any occupation in part because:

A.      Computer work causes her headaches to be exacerbated.

B.      Computer work and reading causes her to constantly have eye strain which also led to headaches and dizziness.

C.      Throughout her career with the County of Fresno she had to take several leaves of absences in addition to days off that did not reach the level of a leave of absence.

19.     In response to Macias' appeal, United of Omaha obtained:

A.      A nurse review by Anna Jones dated April 9, 2021.

B.      An "Occupational Analysis" dated April 15, 2021, by Dawn Viljoen, M. Ed., CRC.

C.      A records review report on Dane Street letterhead, dated May 5, 2021, by Sami Kamjoo, M.D.

D.      A records review on Dane Street letterhead, dated April 26, 2021, by Joann Mundin, M.D.

20.     United of Omaha provided the reports listed in Paragraph 19, to Macias' counsel.

By letter dated May 24, 2021, Macias, through counsel, responded to United of Omaha's medical records reviews and occupational analysis.  In that response, Macias explained, in part:

    A.    That United of Omaha utilized Dane Street, which, in the past has utilized an unlicensed former physician who was impersonating physicians and who provided reports for Dane Street.

    B.    That Dane Street instructs its reviewing doctors to change their reports.

    C.    The medical reviews failed to consider Macias' conditions as a whole.

    D.    That United of Omaha asked the reviewing physicians the wrong questions and they thus provided answers that did not address the issues presented by The Policy so that their reports are dubious as to authenticity and reliability.

    E.    That United of Omaha failed to consider the effects of pain on Macias' functionality.

    F.    That United of Omaha asked the vocational consultant the wrong questions, so that her report does not analyze Macias' job duties consistent with the requirements of The Policy.

21.    In response, United of Omaha obtained a records review report on Dane Street letterhead, dated June 9, 2021, by Darius Schneider, M.D.

22.    By letter dated June 9, 2021, United of Omaha transmitted Dr. Schneider's record review report to Macias for common.

23.    By letter dated June 11, 2021, Macias, through counsel, responded to Dr. Schneider's June 9, 2021, medical review, first noting: It is obvious what is happening here: after receipt of the post-appeal comments that Macias submitted on May 24, 2021, United of Omaha concluded that the evidence and information it developed to that date was insufficient to support its decision to deny benefits.  Therefore, it solicited new and additional evidence.  The letter further explained, It is quite apparent that United of Omaha "sandbagged" Dr. Schneider by not providing him with all the pertinent records.  Finally, the letter explained that Dr. Schneider's report and opinions suffered from the same defects summarized in Paragraph 20, herein.

24.    By letter dated June 16, 2021, United of Omaha denied Macias' appeal of the

denial of LTD benefits, advised her the administrative processes had been exhausted and that "No legal action can be brought more than two years after the date written proof of loss is required or after March 16, 2021."

25.    A.    United of Omaha's June 16, 2021, letter correctly quotes The Policy, which provides, in pertinent part "No legal action can be brought more than two years after the date written proof of loss is required."

B.    Said provision is inconsistent with and contrary to mandatory requirements for all disability policies issued in California, set forth in Insurance Code § 10350.11, which requires the following language "No such action shall be brought after the expiration of <u>three years</u> after the time written proof of loss is required to be furnished." (emphasis added.)

26.    A.    The Policy provides that Proof of loss is defined as:

"First, request a claim form from the Plan Administrator or from us.

This request should be made:

a) within 20 days after a loss occurs; or

b) as soon as reasonably possible.

When We receive the request, We will send a claim form for filing proof of loss.

If You do not receive the form within 15 days of Your request, You can meet the proof of loss requirement by giving Us a written statement of what happened.

Such statement should include:

a) that You are under the Regular Care of a Physician;

b) the appropriate documentation of Your job duties at Your Usual Occupation and Your Basic Monthly Earnings;

c) the date Your Disability began;

d) the cause of Your Disability;

e) any restrictions and limitations preventing You from performing Your Usual Occupation;

f) the name and address of any Hospital or institution where You received treatment, including attending Physicians.

2. Next, You and Your employer need to complete and sign each of Tour

respective sections of the claim for, and then five the claim form to the Physician.

Your Physician should fill out his or her section of the form, sign it, and send it

directly to Us.

3.      The claim form should be sent to Us within 90 days after the end of Your

Elimination Period; or as soon as reasonably possible.  If it is not possible to give

Us proof within 90days, it must be given to Us no later than one year after the time

proof is otherwise required, unless the claimant is not legally capable."

B.      The foregoing provision of The Policy is contrary to the mandatory requirements

of California law.  California Insurance Code § 10350.7 provides:

"A disability policy shall contain a provision which shall be in the form set forth herein.

Proofs of Loss: Written proof of loss must be furnished to the insurer at its said office. In

case of claim for loss for which this policy provides any periodic payment contingent upon

continuing loss within 90 days after the termination of the period for which the insurer is liable

and in case of claim for any other loss within 90 days after the date of such loss.  Failure to

furnish such proof within the time required shall not invalidate nor reduce any claim if it was not

reasonably possible to give proof within such time, provided such proof is furnished as soon as

reasonably possible and in no event, except in the absences of legal capacity, later than one year

from the time proof is otherwise required."

27.      Pursuant to the provisions of Insurance Code § 10326 and 10390 The Policy is

valid, but its non-conforming terms as quoted in Paragraphs 25.A and 26.B are superceded by the

provisions of Insurance Code § 10350.7 and § 10350.11, quoted in Paragraph 25.B. and 26.B.

28.      United of Omaha was required to provide Plaintiff a full and fair review of her

claim for benefits pursuant to 29 U.S.C. § 1133 and its implementing Regulations.  Specifically:

A.      29 U.S.C.§1133 mandates that, in accordance with the Regulations of the

Secretary of Labor, every employee benefit plan, including defendants herein,

shall provide adequate notice in writing to any participant or beneficiary whose

claim for benefits under the plan has been denied, setting forth the specific reasons

for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

      B.     The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. § 1133.  These Regulations are set forth in 29 C.F.R. § 2560.503 1 and provide, as relevant here, that employee benefit plans, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

         i.     Such procedures comply with the specifications of the Regulations.

         ii.     The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, the policy provisions have been applied consistently with respect to similarly situated claimants.

         iii.     Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the policy's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a

rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

iv.      United of Omaha is required to provide a full and fair review of any adverse determination which includes:

a.      That a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

b.      A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to the policy concerning the denied benefit without regard to whether such statement was relied upon in making the benefit determination.

c.      The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

d.      The Regulations further provide that, in deciding an appeal

of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

e.       The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

f.       The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection with the adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual.

29.      United of Omaha denied Macias a full and fair review of her claim for benefits as follows:

A.       United of Omaha does not utilize claims procedures which contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Policy provisions have been applied consistently with respect to similarly situated claimants.

B.       United of Omaha, when denying Plaintiff's claim for LTD benefits did not provide a description of the additional material or information necessary for Plaintiff to perfect Macias' claim or an explanation of why such material or information was necessary.

C.   United of Omaha failed and refused to provide all relevant documents to Plaintiff for use in her appeal.  Specifically, United of Omaha withheld relevant records, including, but not limited to:

    i.   Any claims procedures as specified in Paragraph 28.B.;

    ii.   Statements of policy or guidance with respect to The Policy concerning the denied benefit without regard to whether or not the statement was relied upon in making the benefit determination, as specified in Paragraph 28.B.

D.   In describing Macias' right to bring a civil action, United of Omaha provided Macias false information about her deadline for doing so, in violation of its fiduciary duties to her.

30.   This Court is required to review the termination of Plaintiff's benefits de novo because: (1) The Policy does not reserve discretion; and (2): any discretionary clause in The Policy or any plan document is void and unenforceable due to California Insurance Code section 10110.6 because The Policy:

A.   Provides life insurance or disability insurance coverage, to any California resident;

B.   Was issued or renewed after the effective date of Insurance Code section 10110.6 of January 1, 2012.

C.   The Policy was renewed after January 1, 2012.

31.   Alternatively, if for any reason the Court concludes that review is for abuse of discretion, then this Court should review United of Omaha's decision with limited deference because:

A.   United of Omaha is both the administrator and the funding source for The Policy, and therefore has a conflict of interest.

B.   United of Omaha failed to comply with ERISA's procedural requirements regarding benefit claims procedures and full and fair review of benefit claim denials as set forth in Paragraphs 28 and 29;

C.     United of Omaha utilized medical experts to review Plaintiff's medical records who had a financial conflict of interest, and therefore did not provide a neutral, independent review process.

D.     United of Omaha refused to consider all evidence presented by Plaintiff in the course of her appeal.

E.     United of Omaha's decision making was influenced by its financial conflict of interest.

F.     United of Omaha relied upon factually unsubstantiated medical reviews that were provided by United of Omaha's hired physicians and an invalid vocational evaluation.

32.     United of Omaha's denial of Plaintiff's LTD  benefits was arbitrary and capricious, an abuse of discretion, and a violation of the terms of The Policy.

33.     An actual controversy has arisen and now exists between Plaintiff and United of Omaha with respect to whether Plaintiff is entitled to LTD benefits under The Policy.

34.     Plaintiff contends, and United of Omaha disputes, that Plaintiff is entitled to LTD benefits under the terms of The Policy because Plaintiff contends, and United of Omaha disputes, that Plaintiff is totally disabled.

35.     Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that United of Omaha is obligated to pay LTD benefits under the terms of The Policy, retroactive to the first day she was entitled to such benefits, until and unless such time that Plaintiff is no longer eligible for such benefits under the terms of The Policy, i.e., until Plaintiff reaches the age of 67.

36.     A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

37.     As a proximate result of United of Omaha's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which she is

entitled under the terms of The Policy.  Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

## SECOND CLAIM FOR RELIEF

(For a Permanent Injunction or Other Appropriate Equitable Relief)

38.     Plaintiff incorporates by reference paragraphs 1 through 37, inclusive, of this Complaint.

39.     29 U.S.C. §1132(a)(3) authorizes a participant or beneficiary of an ERISA plan, such as Macias, to bring a civil action to enjoin any act or practice which violates any provision of subchapter 1, 29 U.S.C. §§1001 – 1191, or the terms of the plan, or to obtain other appropriate equitable relief, such as reformation to address such violations or to enforce any provisions of subchapter 1 or the terms of the plan.

40.     United of Omaha acted in a fiduciary capacity when it investigated and decided to deny Macias' LTD benefits and when it investigated and decided to deny Macias' appeal of that termination.

41.     As a fiduciary, United of Omaha was obligated: to discharge its duties with respect to the plan solely in the interest of its participants and their beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and to defray reasonable expenses of administrating the plan; to do so with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and to do so in accordance with the documents and instruments regarding the plan insofar as such documents and instruments are consistent with the provisions of  the relevant subchapters of ERISA.

42.     In the course of investigating and deciding Macias' claim and appeal, United of Omaha engaged in acts and practices in violation of ERISA subchapter 1:

   A.     Making a discretionary determination about whether a claimant is entitled to benefits under the terms of a plan is a fiduciary act.

B.     An ERISA fiduciary includes anyone who exercises discretionary authority over the plan's management, anyone who exercises authority of the management of its assets, and anyone having discretionary authority or responsibility in the plan's administration.  Insurers can be ERISA fiduciaries if they are given the discretion to mange plan assets or manage claims against the plan.  An insurer will be found to be an ERISA fiduciary if it has the authority to grant, deny, or review denied claims. An entity with discretionary authority to decide claims and benefits, even if not the designated plan administrator, is a plan fiduciary.

C.     Deciding a claim for benefits is a fiduciary act.  There is more to plan administration than simply complying with the specific duties imposed by the plan documents or statutory regime; it also includes the activities that are ordinary and natural means of achieving the objective of the plan . If the fiduciary duty applied to nothing more than activities already controlled by other specific legal duties, it would serve no purpose. All acts necessary or appropriate for deciding a claim or paying the beneficiary - - or which are the ordinary and natural means of deciding the claim and paying the benefits carrying out the purposes of the plan - - are fiduciary acts, even if not specifically mandated by the policy or by statute.

D.     ERISA fiduciary duties include the common law duty of loyalty, which requires fiduciaries to deal fairly and honestly with beneficiaries. The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA.  A fiduciary has a duty not only to inform a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that threaten interests relevant to the relationship.  An ERISA fiduciary has an affirmative obligation to inform and to provide complete and correct material information on the beneficiary's status and options.

E.     ERISA imposes higher-than-market place quality of standards on insurers. It sets forth a special standard of care upon a plan administrator, namely that the

administrator 'discharge its duties with respect to discretionary claims processing solely in the interests of the participants and beneficiaries of the plan.

F.      To participate knowingly and significantly in deceiving a plan's beneficiaries in order to save money at the beneficiaries expense is not to act solely in the interest of the participants and beneficiaries; lying is inconsistent with the duty of loyalty owed by ERISA fiduciaries.

G.      As more fully alleged in Paragraphs 25, 26, 27, and 29.D., herein United of Omaha provided false information about the contractual limitations period in The Policy to Macias and also did not disclosure to Macias that the "proof of loss" provision in The Policy does not conform law and is unenforceable as written.

43.     In the course of investigating and deciding Macias' claim and appeal:

A.      United of Omaha failed to actual solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defray reasonable expenses of administering the plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, by knowingly.  In light of United of Omaha's actual knowledge of.

B.      United of Omaha had and has acted knowledge that the relevant provisions of The Policy, quoted in  ¶ 25.A and 26.A, above, are contrary to law, may not be enforced, and must be construed consistent with the terms of Insurance Code §§ 10350.7 and 10350.11, as quoted in Paragraphs 25.B. and 26.B., above because it litigated and lost these precise issues in *Hughes v. United of Omaha,* No. 1:17-cv-00779-DAD-SAB, 2017 WL 4517801 (E.D. Cal. October 10, 2017).

44.     As a matter of custom and practice United of Omaha continues to engage in the acts and practices alleged in Paragraph 42.

45.     Macias is potentially entitled to LTD benefits from United of Omaha until 2040, when will become 67 years old.  Unless United of Omaha is permanently enjoined from engaging

in the acts and practices described in Paragraph 42, or unless Macias is provided other appropriate equitable relief, such as reformation of The Policy so that it conforms to the requirements of law.  United of Omaha will continue to engage in the acts and practices described in Paragraph 42 with reference to Macias' claim once her benefits are reinstated and with reference to other claimants under The Policy.

WHEREFORE, Plaintiff prays judgment as follows:

1.      For declaratory judgment against United of Omaha, requiring it to pay LTD benefits under the terms of The Policy to Plaintiff for the period to which she is entitled to such benefits, with prejudgment interest on all unpaid benefits, until it is determined that Plaintiff is no longer eligible for benefits under the terms of The Policy.

2.      For a permanent injunction or other appropriate equitable relief, such as reformation of The Policy so that it conforms to the requirements of law, pursuant to 29 U.S.C. § 1132(a)(3):

A.      Prohibiting United of Omaha from misrepresenting the terms of The Policy to claimants, as alleged in Paragraphs 25 and 26, 42, and 43;

B.      Requiring United of Omaha to notify all participants and beneficiaries of The Policy in every communication to such participants or beneficiaries concerning "proof of loss" and the deadline for filing suit that the relevant provisions of The Policy, as quoted in Paragraphs 25.A. and 25.B. are illegal, null and void and that the provisions of Insurance Code §§ 10350.7 and 10350.11 quoted in Paragraphs 25.A. and 25.B., apply in their place; or reforming The Policy to comply with the requirements of law.

3.      For attorney's fees pursuant to statute against United of Omaha.

4.      For costs of suit incurred.

5.      For such other and further relief as the Court deems just and proper.

Date:   June 29, 2021                    _/s/  Robert J. Rosati_
                                         ROBERT J. ROSATI, No. 112006

                                         Attorney for Plaintiff,
                                         LORINA MACIAS